Appellant, William H. Payton, appeals from a decision of the Fayette County Court of Common Pleas that dismissed his petition for postconviction relief.
On May 13, 1993, Payton was indicted for the murder of Larry Yenger with a firearm specification. After a jury returned a guilty verdict in August 1993, Payton was sentenced to fifteen years to life for murder and a three year term of actual incarceration for the firearm specification. This court affirmed Payton's conviction, State v. Payton (Aug. 8, 1994), Fayette App. No. CA93-12-028, unreported, and the Ohio Supreme Court declined review, State v. Payton (1995), 71 Ohio St.3d 1444.
On September 23, 1996, Payton filed a petition for postconviction relief. In his petition, Payton claimed that he received ineffective assistance of counsel during his trial. The prosecutor filed a motion for summary judgment on October 3, 1996. On March 3, 1997, the trial court issued a decision that granted the prosecutor's motion and dismissed Payton's petition without a hearing. Payton timely appealed and assigns a single assignment of error:
 THE LOWER COURT ERRED BY HOLDING THAT MR. PAYTON IS BARRED BY THE DOCTRINE OF RES JUDICATA FROM RAISING AND ARGUING THE ISSUE OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL.
In his sole assignment of error, Payton asserts that the trial court erred by dismissing his petition without a hearing. A petition for postconviction relief may be dismissed without a hearing if a petitioner fails to submit evidentiary material that sets forth sufficient operative facts to demonstrate substantive grounds for relief. State v. Jackson (1980), 64 Ohio St.2d 107,110. A petition for postconviction relief may also be dismissed without a hearing based upon the res judicata doctrine where a petitioner could have raised the issues in his petition at trial or on direct appeal. State v. Perry (1967), 10 Ohio St.2d 175.
A postconviction petition alleging ineffective assistance of trial counsel may be dismissed without a hearing based upon res judicata where the petitioner had new counsel on direct appeal and the claim of ineffective assistance could have been raised on direct appeal without resort to evidence outside the record. State v. Cole (1982), 2 Ohio St.3d 112, syllabus. However, the Ohio Supreme Court has recognized that since a lawyer cannot be expected to assert his own incompetence, res judicata does not bar a petitioner represented by the same counsel at trial and on direct appeal from raising a claim of ineffective assistance of counsel in his postconviction petition. Cole at 114, fn. 1, citing State v. Carter (C.P. 1973), 36 Ohio Misc. 170. See, also, State v. Lentz (1994), 70 Ohio St.3d 527, 529-530. In the Lentz syllabus, the Ohio Supreme Court stated:
 When a criminal defendant is represented by two different attorneys from the same public defender's office at trial and on direct appeal, res judicata bars a claim of ineffective assistance of trial counsel raised for the first time in a petition for postconviction relief when such claim could have been made on direct appeal without resort to evidence beyond the record, unless the defendant proves that an actual conflict of interest enjoined appellate counsel from raising ineffective assistance of trial counsel on direct appeal. Lentz at syllabus.
In the present case, the trial court found that Payton's claim of ineffective assistance of trial counsel was barred by res judicata because he had "new counsel" on appeal and he failed to show that a conflict of interest prevented his appellate counsel from asserting a claim of ineffective assistance. However, a review of the record reveals that Barry Epstein and David Graeff served as co-counsel for Payton on direct appeal. Epstein also served as primary trial counsel for Payton and Graeff appeared as trial counsel for Payton at his sentencing and at a hearing on his motion for a new trial. Thus, since Payton was not represented by "different attorneys" at trial and on direct appeal, Lentz and the "actual conflict" standard are inapplicable. Payton did not have "new counsel" on direct appeal. See State v. Powell (Jan. 30, 1992), Cuyahoga App. No. 59821, unreported; State v. Taylor (Feb. 26, 1990), Butler App. No. CA89-04-064, unreported. Therefore, the trial court erred by finding that res judicata barred Payton from asserting his claim of ineffective assistance of trial counsel in his postconviction petition. Cole at syllabus.
Pursuant to R.C. 2501.02, the jurisdiction of an appellate court to review, affirm, modify, set aside or reverse lower court judgments is based upon prejudicial error committed by the lower court. Thus, when a trial court has stated an erroneous basis for its judgment, an appellate court must affirm the judgment if it is legally correct on other grounds, that is, it achieves the right result for the wrong reason, because such an error is not prejudicial. Newcomb v. Dredge (1957), 105 Ohio App. 417; State v. Hall (Oct. 24, 1997), Miami App. No. 97-CA-22, unreported. In the present case, although the trial court erred by dismissing Payton's petition based upon res judicata, we find that dismissal of the petition was the "right result" because Payton failed to submit sufficient evidentiary materials that demonstrated substantive grounds for relief. Jackson, 64 Ohio St.3d at 110.
In order to establish a claim of ineffective assistance of counsel, it must be shown that an attorney's performance was deficient and that the deficient performance prejudiced the defense. Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052, 2064. In postconviction proceedings, the petitioner bears the initial burden of submitting evidentiary materials containing sufficient operative facts to demonstrate the lack of competent counsel and also that his defense was prejudiced by counsel's ineffectiveness. Jackson at 111. A petitioner must present more than "broad assertions" or "general conclusory allegations." Id.
In order to establish deficient performance, it must be shown that, under the totality of the circumstances, counsel's representation fell below an objective standard of reasonableness. Strickland at 688, 104 S.Ct. at 2064. A court "must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." Id. at 694, 104 S.Ct. at 2065. Debatable trial tactics and strategies generally do not constitute deficient performance. State v. Phillips (1995), 74 Ohio St.3d 72, 85; State v. Clayton (1980),62 Ohio St.2d 45, 49. Further, the result of tactical trial decisions need not be positive in order for counsel to be considered "effective." State v. Awkal (1996), 76 Ohio St.3d 324,337.
In order to establish prejudice, it must be shown that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland at 694, 104 S.Ct. at 2068. A reasonable probability is "a probability sufficient to undermine confidence in the outcome" of the proceeding. Id. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed." State v. Loza (1994), 71 Ohio St.3d 61, 83, citing Strickland at 697, 104 S.Ct. at 2069.
Payton's petition alleged that his trial counsel was ineffective due to the following: (1) failing to raise the issues of spousal competency and spousal privilege in the form of an objection to the state's calling of Payton's wife, Kristi Payton, to testify; (2) calling Kristi as a witness in the defense case in chief without regard to the issues of spousal competency and spousal privilege; (3) failing to request surrebuttal regarding a rebuttal witness presented by the state; (4) failing to request a jury instruction that Mr. Payton's exercise of his Fifth Amendment privilege against self-incrimination must not be construed against him; and (5) failing to adequately prepare and investigate witnesses.
In support of his claim of ineffective assistance, Payton submitted his own affidavit and an affidavit from Kristi. In the affidavits, Payton and Kristi state that Payton's trial counsel never informed them about the issues of spousal competency and spousal privilege. Payton stated that he would not have waived spousal privilege if his trial counsel had informed him about the issue. Kristi stated that she would not have elected to testify if Payton's trial counsel had informed her about the issue of spousal competency. Finally, Kristi's affidavit stated that Payton's trial counsel did not prepare her to testify.
A review of the record reveals that a Fayette County Sheriff's dispatcher testified that she received a "9-1-1" emergency call from Payton's home address at 2:14 p.m. on May 2, 1993. The dispatcher testified that the caller identified herself as Kristi Payton, and requested a life squad and police because her husband and Larry Yenger were involved in an altercation. A recording of the telephone call was played for the jury and the dispatcher testified that the recording was a true and accurate recording of the call that she received. The state subsequently called Kristi as a witness, and she testified that she made the "9-1-1" emergency call to the Fayette County Sheriff's Department on May 2, 1993 from her home. The recording of the telephone call was played for the jury again and Kristi acknowledged that the voice on the recording was her own.
Payton has not submitted evidentiary materials containing sufficient operative facts to demonstrate that he was prejudiced by Kristi's testimony during the state's case. Since Kristi's testimony during the state's case was merely cumulative to the testimony of the dispatcher and the recording of the "9-1-1" call that was played for the jury, Payton has not demonstrated that there is a reasonable probability the result of his trial would have been different absent Kristi's testimony during the state's case. Accordingly, Payton has not demonstrated that he was prejudiced by his trial counsel's failure to raise the issues of spousal competency and spousal privilege when Kristi was called as a witness by the state.
Payton argues that his trial counsel was ineffective for calling Kristi as a witness without regard to the issues of spousal competency and spousal privilege. The decision whether or not to call a witness is a trial tactic that generally will not sustain a claim of ineffective assistance. State v. Coulter (1992),75 Ohio App.3d 219, 230; State v. Williams (1991), 74 Ohio App.3d 686,695. After thoroughly reviewing the record, we find that the decision to call Kristi as a defense witness, without regard to spousal competency and spousal privilege, was a trial tactic that does not constitute deficient performance. Further, Payton has failed to demonstrate that there is a reasonable probability that the result of his trial would have been different absent Kristi's testimony.
The state presented substantial and credible evidence that Payton murdered Larry Yenger. Yenger owned property adjacent to the Paytons' farm. Yenger and Payton had an ongoing dispute over the maintenance of a drainage ditch running between the two properties. When Yenger was last seen alive by his family at approximately 1:30 p.m. on May 2, 1993, he was on his way to spread straw in his field that was located adjacent to the Paytons' farm. At 2:14 p.m., the Fayette County Sheriff's department received Kristi's "9-1-1" emergency call requesting life squad and police because Payton and Yenger were involved in an altercation. Police arrived at the Payton farm at approximately 2:21 p.m., and Payton answered the door. When police asked him whether anyone had been injured, Payton replied "Larry might be" and pointed to a pickup truck parked in the nearby field. Police found Yenger's dead body inside the truck with two gun shot wounds in the abdomen. A coroner testified that the approximate time of Yenger's death was 2:14 p.m.
A life squad departed Jefersonville at 2:23 p.m. On route to the Paytons' farm, a volunteer member of the life squad, who worked with Kristi Payton, testified that he saw Kristi driving a car "in a hurry" and in a direction away from the Paytons' farm. He further testified that Kristi was not at the Payton farm when the life squad arrived at approximately 2:29 and she did not arrive until later in the afternoon.
Neighbors of Ernest Payton testified that Kristi was upset and crying when she arrived at her brother-in-law's house in the middle of the afternoon on May 2, 1993. The neighbors testified that Ernest took an item that was wrapped in a yellow rag or towel from Kristi's car. During a subsequent search of Ernest Payton's home, police discovered a .357 caliber pistol and a yellow towel with traces of gunpowder. A coroner testified that Yenger's death was caused by gunshot wounds and that a .357 caliber pistol could have been used to commit the crime.
When Kristi was called as a defense witness, she testified that Payton came into their house for lunch between 1:30 and 1:45 p.m. on May 2, 1993. Kristi testified that Payton and Yenger had been "having words" before Payton came into the house and Payton asked her to make the "9-1-1" call because Yenger was "going up and down the fence row" between their properties. Kristi testified that after she made the call, Payton remained in the house with their daughter while Yenger was in his truck driving away from their property. Kristi testified that she informed Payton that he could deal with the police when they arrived and left the house to take some combine parts to Ernest Payton. Kristi testified that as she left the Payton farm, she saw Yenger's truck moving farther away. Kristi testified that she was not upset when she delivered the combine parts to Ernest and she denied delivering an item wrapped in a yellow towel. Kristi testified that after the delivering the combine parts, she returned home to find the police and life squad at the scene. Kristi testified that Payton had taken the yellow towel that was discovered at Ernest's house in February or March along with some chains that were used to deliver a calf. Kristi testified that Payton had previously used the towel to clean guns.
Upon cross-examination, the prosecutor brought out inconsistencies between Kristi's trial testimony and the "9-1-1" call that she made on May 2, 1993. In addition, Kristi was questioned about "9-1-1" calls that she had made on at least two previous occasions because of confrontations between Payton and Yenger. Kristi also acknowledged that Payton liked to argue and that she had previously called the police because of a dispute between her and Payton. Finally, the prosecutor asked Kristi whether she told a co-worker that Yenger would have to be shot unless the ditch problem was solved. Kristi denied making the statement.
After reviewing the record, we find that the decision to call Kristi as a defense witness, despite the issues of spousal competency and spousal privilege, was a tactical decision made in an effort to rebut the evidence produced by the state. Kristi's testimony was inconsistent with much of the evidence and reasonable inferences that could be drawn from the state's case. In addition, the defense called Payton's daughter and Ernest Payton as witnesses to corroborate Kristi's testimony. Payton's daughter testified that after her mother left to visit Ernest, she heard gunshots while she was inside the house with Payton. Ernest's testimony also collaborated much of Kristi's testimony concerning her visit to his house on May 2, 1993. Based upon the foregoing, we conclude that the decision to call Kristi as a defense witness, despite spousal competency and spousal privilege, was a tactical trial decision that does not constitute deficient performance.
Payton has also failed to demonstrate that there is a reasonable probability that the result of his trial would have been different absent Kristi's testimony. The state produced substantial and credible evidence that Payton murdered Larry Yenger. For the most part, Kristi's testimony was inconsistent with the state's theory of the case and was not damaging to Payton's defense. Accordingly, Payton has not demonstrated that he was prejudiced by his trial counsel's decision to call Kristi as a witness despite spousal competency and spousal privilege.
Payton argues that his trial counsel was ineffective for failing to request surrebuttal regarding a rebuttal witness, Barbara Newman, presented by the state. Newman testified that she overheard Kristi Payton state to a co-worker that if something was not done about the ditch dispute between Yenger and Payton "there's gonna be a shooting." Payton has not identified any surrebuttal evidence or witnesses that would have contributed to his defense. Thus, Payton has not shown that his trial counsel's refusal to request surrebuttal was anything other than acceptable trial tactics that did not prejudice his defense. See State v. Cantwell (Nov. 24, 1997), Clermont App. No. CA97-02-018, unreported; State v. McDaniel (Oct. 24, 1997), Miami App. No. 97-CA-7, unreported.
Payton argues that his trial counsel was ineffective for failing to request a jury instruction that the exercise of his Fifth Amendment privilege against self-incrimination must not be construed against him. Payton has not demonstrated a reasonable probability exists that the outcome of his trial would have been different if the request would have been made. Accordingly, his broad and conclusory assertion is insufficient to establish ineffective assistance of counsel. See Jackson at 111.
Payton argues that his trial counsel was ineffective for failing to adequately prepare and investigate witnesses. In support of this argument, Payton relies solely upon Kristi's affidavit which states that his trial counsel "did not prepare me for testifying in this case." Once again, this broad and conclusory assertion is insufficient to demonstrate that Payton received ineffective assistance of counsel. See Jackson at 111; State v. Hill (July 31, 1995), Stark App. No. 1994 CA 00354, unreported.
In sum, we find that the trial court erred by dismissing Payton's petition based upon res judicata. Nevertheless, we find that such error was not prejudicial because Payton failed to submit evidentiary materials containing sufficient operative facts to demonstrate ineffective assistance of counsel. Accordingly, we affirm the dismissal of Payton's postconviction petition without a hearing. The assignment of error is overruled.
Judgment affirmed.
POWELL, J., concurs.
WALSH, J., dissents.