In this case, Thomas Goney appeals from the trial court's denial of a petition for post-conviction relief. For purposes of clarity, before we address the assignments of error, we will briefly discuss the procedural history of this criminal case, which began in October, 1991, with the alleged rape of Goney's cousin, Lori Calton. Goney was indicted for the crime and was convicted after a jury trial held in April, 1992. Subsequently, Goney was sentenced to ten to twenty-five years for the rape, with ten years actual incarceration.
At trial, Goney was represented by attorney, Patrick Flanagan. However, new counsel filed a direct appeal on Goney's behalf. In the appeal, one issue was raised, i.e., whether the trial court erred in admitting evidence of Goney's 1978 bank robbery conviction. We decided that no error occurred and affirmed the conviction. See, State v. Goney (1993),87 Ohio App.3d 497. On September 23, 1992, while the case was pending on appeal, Goney filed a pro se motion for new trial and post-conviction relief. In the motion, Goney claimed various errors in the trial process, including the prosecutor's comparison of Goney to Charles Manson and Jeffrey Dahmer; the admission of a prior conviction that had been reversed; and the failure of the evidence at trial to establish rape. Goney also raised the ineffectiveness of his trial counsel, in that counsel: 1) failed to investigate witnesses, 2) failed to tell Goney the difference between sexual "contact" and sexual "conduct," 3) failed to obtain forensic tests; and 4) failed to timely file for post-conviction relief. The State then filed a motion to dismiss the petition because a direct appeal was pending, and on October 14, 1992, the trial court dismissed the petition for lack of jurisdiction.
Our decision in the direct appeal was filed on August 3, 1993. Goney, again acting pro se, filed a motion for delayed reconsideration with our court, but we rejected the motion. See, State v. Goney
(Oct. 21, 1994), Montgomery App. No. 13474, unreported. In our decision, we noted that:
 [a]ppellant presents seven assignments of error challenging the effectiveness of trial counsel, the competency of prosecution witnesses, the failure of the trial court to instruct the jury on lesser included offenses to rape, the violation of his constitutional right to competent defense representation through all critical stages of the criminal proceedings, the failure of trial counsel to challenge prosecutorial misconduct, the failure of appellate counsel to argue that a prior conviction for robbery amounted to unfair prejudice and surprise, and the failure of appellate counsel to argue ineffectiveness of trial counsel, prosecutorial misconduct, and trial court error.
Id. at pp. 1-2. We rejected these arguments for two reasons. First, several assignments of error concerned matters outside the record. Second,Goney failed to show prejudice resulting from the alleged breaches. Goney then appealed the denial of reconsideration to the Ohio Supreme Court, which affirmed our decision. See, State v. Goney (1995),72 Ohio St.3d 314.
Next, on August 23, 1996, Goney filed a motion with the trial court, asking the court to order D.N.A. testing of bodily fluids and hair taken from himself and from the victim, Lori Calton. In an affidavit accompanying the motion, Goney claimed he did not have sexual intercourse with Calton. In particular, he said he did not either penetrate or ejaculate. As a result, Goney asked for D.N.A. testing so he could show at an evidentiary hearing that he did not have sexual intercourse with Calton. In this regard, Goney's position, stressed in numerous pleadings, was that he told both his trial and appellate counsel that he and Calton did not have sexual intercourse. According to Goney, trial counsel was ineffective because he failed to investigate Calton's activities with other people that night, and also did not tell Goney that sexual conduct differed from sexual contact. Specifically, R.C. 2907.01(A) defines "sexual conduct" as including vaginal intercourse, including any slight penetration into the vagina. By contrast, "sexual contact" is restricted to "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01
(B). The importance of the distinction is that "contact" allows conviction only for gross sexual imposition, while "conduct" supports a rape conviction. Compare, R.C. 2907.05 with R.C. 2907.02. Allegedly, had Goney been properly informed of this distinction, he would not have admitted, in response to prosecution questions, that he "had sex" with Calton.
Goney was represented by an attorney in connection with the request for D.N.A. testing. However, on September 5, 1996, Goney also filed a pro se
petition with the trial court, asking that his sentence be vacated. Although the petition rambles and is disjointed, the grounds for the petition appear to be divided into the following areas: 1) trial court error; 2) prosecutorial misconduct; 3) ineffectiveness of trial counsel; and 4) ineffectiveness of appellate counsel.
Concerning the first category, Goney claimed the trial court erred in four ways: 1) by allowing inadmissible testimony; 2) by entering a finding of guilty when counsel failed to move to suppress evidence; 3) by failing to instruct the jury on the limited purpose of evidence about Goney's prior conviction; and 4) by failing to instruct the jury on a lesser included offense. Regarding prosecutorial misconduct, Goney raised two issues: 1) the prosecutor's comparison of Goney to infamous criminals like Charles Manson, Jeffrey Dahmer, and Ted Bundy; and 2) the prosecutor's improper reference in closing argument to Goney's prior conviction.
Next, Goney raised seven specific instances of ineffectiveness by trial counsel, including: 1) failure to request a D.N.A. test; 2) failure to investigate and call witnesses known to the defense; 3) failure to introduce forensic test results; 4) ineffective advice vis a vis sexual "conduct" and "contact;" 5) failure to obtain and introduce Goney's blood test results; 6) failure to argue or submit a motion to suppress the testimony of a State witness; and 7) failure to file a post-conviction motion. And finally, Goney alleged his appellate counsel was ineffective in: 1) failing to properly address the one issue that was appealed; 2) failing to rebut the mistakes in the Appellee's brief; and 3) failing to assign prejudicial error that was ascertainable from the transcripts. Concerning this latter point, Goney did not identify any particular errors that should have been apparent, other than some typographical errors.
A number of documents were attached to Goney's pro se petition to vacate, including a report from the Miami Valley Regional Crime Lab verifying the presence of seminal fluid and sperm cells in vaginal swabs and aspirate taken from Calton. Apparently, a D.N.A. comparison was not made before trial because the lab was never given Goney's blood and saliva samples. Instead, the lab received only hair and dry saliva samples.
On November 13, 1996, the State filed a motion for summary judgment, claiming that most of the alleged trial errors were barred by resjudicata, since they could have been raised on direct appeal. The State did concede that ineffective assistance of appellate counsel claims were not barred, but argued instead that Goney had not shown either ineffective assistance of appellate counsel or prejudice. Subsequently, on October 8, 1997, the trial court granted the State's summary judgment motion in part and overruled it in part. The court listed six specific claims which were raised in the petition, and held that four were barred byres judicata. These four were: 1) trial counsel's use of consent as a defense to the rape charge despite the fact that Goney told counsel no sexual intercourse had taken place; 2) trial counsel's failure to move to suppress testimony and evidence; 3) trial counsel's failure to request a jury view; and 4) trial counsel's failure to seek instructions on the lesser included offense of gross sexual imposition. Concerning the remaining two claims, the court noted first that ineffective assistance of appellate counsel could not be brought in the trial court, but must be presented to the court of appeals in an application for reconsideration or reopening. Second, the court decided that the D.N.A. testing claim was not barred because the testing was potentially exculpatory and could not have been decided on direct appeal.
Based on the above findings, the trial court authorized D.N.A. testing, and also asked Goney to supplement his post-conviction petition after the test results were made known. Testing was done in April, 1998, and on June 3, 1998, the results were released. The testing revealed that Goney's D.N.A. was consistent with the male D.N.A. found on the vaginal swabs and in the vaginal aspirate taken from Calton. After the results were released, Goney did not supplement his petition to address the test results. Instead, he filed an amended motion on June 29, 1998, in which he claimed to have discovered new evidence. This "new evidence" was the existence of The Montgomery County Court Management Plan, Loc. R. 3.03 of the Court of Common Pleas of Montgomery County, General Division, and Crim. R.16(B) and (C). In this context, Goney raised three more issues, all of which related to the admission of evidence at trial about Goney's 1978 conviction for bank robbery.
In response to Goney's amended motion, the State filed a second motion for summary judgment, which was granted by the trial court on July 28, 1998. In its decision, the court noted that the D.N.A. results directly contradicted Goney's claim that he and Calton did not engage in sexual intercourse. Accordingly, the court awarded summary judgment because the lack of D.N.A. testing could not have prejudiced Goney. Shortly after the court's summary judgment decision, Goney filed a motion for reconsideration, maintaining that he had not been given enough time to respond to the State's summary judgment motion. The court then agreed to reconsider its ruling. However, on October 29, 1998, the court issued another decision, again granting summary judgment to the State.
Goney now appeals to our court, raising various assignments of error, none of which identify specific error. For example, under the first assignment of error, the only item listed is "Ineffective Assistance of Trial Counsel [sic] "counsel's deficiencies." Likewise, the second assignment or error simply contains the phrase, "Trial Court Error." Goney has attempted to flesh out the assignments of error by listing specific items as "issues presented." Therefore, we assume these "issues" are intended to be assignments of error and will treat them as such. We do note that the issues in Goney's appellate brief are essentially the same as those raised in the post-conviction petitions, with a few additions. To the extent the alleged errors can be gleaned from Goney's brief, they appear to be as follows:
 I. Trial counsel rendered ineffective assistance of counsel (eight separate deficiencies are listed, and they will be addressed further below);
 II. The trial court committed error in the original trial proceedings (three specific errors are listed and will be discussed below). The trial court also erred in granting the State's second motion for summary judgment without allowing Defendant-Appellant an opportunity to timely oppose and argue the State's motion.
 III. At the original trial, State witnesses committed misconduct by testifying falsely or contrary to other evidence.
 IV. The prosecutor committed misconduct during the original trial proceedings by assassinating the Defendant's character and by failing to acknowledge the fact that sufficient evidence was being held from the court and the jury.
 V. Appellate Counsel was ineffective by failing to properly address and argue the one issue that she raised on direct appeal.
Three additional matters are raised at the end of Goney's Brief, as "Propositions of Law." These items are:
 I. Montgomery County Loc. R. 3.03 requires the State to produce a defendant's prior criminal record of convictions as notice of intent to use such convictions for evidence.
 II. The Courts of Common Pleas are bound by the Rules under the statutory construction of R.C. 1.51.
 III. An attorney, in representing a defendant client, has a constitutional duty to hold the Court bound by its rules.
Goney filed an additional brief on January 22, 1999, raising several more assignments of error, as follows:
 I. The trial court erred when it failed to address all of the issues that were presented in the Defendant's Post Conviction Motion pursuant to R.C. 2953.21.
 II. The trial court erred by granting the State's second motion for summary judgment when it dismissed several of the Defendant's issues under the doctrine of res judicata.
 III. The trial court erred by overruling the Defendant's supplemental brief and leave to amend to include additional grounds.
 IV. The trial court ignored or failed to correctly interpret and apply several rules and procedures of the court pertaining to the discovery process and the exchange of this material between counsel.
Each of the above alleged errors will be addressed below, including the specific issues listed within the assignments of error, to the extent the issues are not repetitive. With the above procedural background in mind, we now consider the assignments of error.
 I
At the outset, we stress that we have carefully reviewed the record in this case, including the entire trial transcript, the documents attached to the post-conviction petitions, and the prior decisions at the trial and appellate level. We also emphasize that we are aware of Goney's claim of inconsistency between our rejection of reconsideration in Goney's prior appeal and the trial court's decision to grant summary judgment on resjudicata grounds. As we mentioned earlier, our denial of reconsideration was based, in part, on the fact that the motion for reconsideration appeared to raise matters outside the record. Goney contends he should not be precluded from appealing on that basis and then be deprived of an alternate remedy (post-conviction relief) on the basis that the same issues should have been raised on direct appeal. Although Goney's argument has surface validity, our analysis indicates that he has not been deprived of any remedies. In the first place, we specifically noted in our decision on reconsideration that no prejudice had been shown as a result of the alleged errors. Therefore, our finding that certain matters were outside the record was not the sole basis for denial of reconsideration. Second, our review of the record indicates that the claims Goney now raises are insufficiently supported by factual materials, could have been brought on direct appeal, or simply lack merit.
As we mentioned above, Goney has presented eight ways in which trial counsel was allegedly ineffective, including:
 1) failure to investigate and review discovery material provided by the State;
 2) failure to use discovery material and failure to introduce evidence within that material into the court record which would have been beneficial to the Defendant during his trial;
 3) failure to verify information and facts about the case, or to conduct an investigation into the lack of incriminating evidence about the Defendant;
 4) failure to timely file a motion to suppress the testimony of Michael Hall (a State witness), who was asleep during the entire time frame that the alleged crime was to have occurred;
 5) failure to interview and investigate potential witnesses (including State witnesses); failure to prepare for cross-examination of State witnesses; and failure to call witnesses to testify for the defense;
 6) incompetency during the trial stage (Allegedly, trial counsel attempted to piece information together during trial that was in the discovery material that the State provided, and counsel should have known of its contents);
 7) failure to request a jury view of the complainant's residence; and
 8) failure to move for an in camera inspection after the testimony of State witnesses.
In evaluating these eight items, we note first, with regard tores judicata, that:
 a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment.
 State v. McDaniel (Oct. 24, 1997), Miami App. No. 97-CA-7, unreported, Id. at p. 3, quoting State v. Perry (1967), 10 Ohio St.2d 175, paragraphs eight and nine of the syllabus. Furthermore, claims of ineffective assistance of trial counsel are barred if a defendant was represented by new counsel on appeal and the issues could have been determined without reference to evidence outside the record. Id.
With these general principles in mind, we find that items four (failure to file a motion to suppress), six (incompetence during trial), and eight (failure to move for an in camera inspection) could have been determined without reference to matters outside the record, and are barred by res judicata. Next, concerning the remaining items (one, two, three, five, and seven), we find that Goney either did not file appropriate supporting factual materials with the trial court, that the materials do not support his allegations, or that prejudice was not shown. In this regard, R.C. 2953.21(C) states, in pertinent part, that:
 Before granting a hearing on a petition filed under division (A) of this section, the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against the petitioner.
Unquestionably, a petition can be dismissed without a hearing if it lacks evidentiary materials that set out operative facts showing substantive grounds for relief. State v. Sowell (1991) 73 Ohio App.3d 672,682. Of particular note is the fact that the "`evidence presented outside the record must meet some threshold standard of cogency; * * * [it cannot be] evidence which is only marginally significant and does not advance the petitioner's claim beyond mere hypothesis and a desire for further discovery.'" State v. Lawson (1995), 103 Ohio App.3d 307, 315. In the specific context of ineffective assistance, the petitioner has the burden of demonstrating lack of competent counsel and prejudice to the defense. State v. Jackson (1980), 64 Ohio St.2d 107.
The materials attached to Goney's verified petition to vacate of September 5, 1996 include a November 19, 1981 report from the Miami Valley Regional Crime Laboratory. They also include letters written by Goney to his appellate counsel, to the Ohio State Bar Association, and to various other individuals. In these letters, Goney makes several factual statements about his trial and trial counsel. According to Goney, trial counsel said before trial that he intended to request a jury view, that he would talk to Michael Hall, a child witness, and that he would seek an opinion from another doctor. In the letters, Goney also states that he did not have intercourse with Calton, and that he was unaware until the time of sentencing that D.N.A. comparisons had not been made. The only other documents submitted to the trial court (besides the D.N.A. test results) were a few items in an appendix attached to Goney's Supplemental Brief and Leave to Amend to Include Additional Grounds, filed on August 6, 1998. These items include a copy of our decision on the motion for reconsideration, excerpts from local rules of court, and copies of two documents relating to discovery requests made before the original trial. Other records were admitted at trial and were available to the trial court for post-conviction review, including Deputy Faldorf's utility report and the sexual assault evidence collection kit (including the sexual assault form).
Basically, the five claims of ineffective assistance that are not automatically foreclosed by the record can be reduced to allegations that trial counsel failed to properly investigate and prepare the case, failed to use exculpatory material at trial, and failed to request a jury view. In this regard, Goney raises the following factual points in his appellate brief:
 1) According to the offense reports, Michael Hall was asleep at the time of the alleged rape and could not have witnessed the crime.
 2) Detective Menke conducted a forensic examination of hair and fibers from the couch where the rape was alleged to have occurred. The evidence collected from the couch was negative when compared to Goney. Menke should have been called to testify that Goney could not have raped Calton on the couch without leaving evidence.
 3) The sexual assault form contradicts the testimony of the doctor and nurse as to which individual did the procedures at the hospital.
 4) Evidence of Calton's prior sexual activities should have been presented or the evidence of seminal fluid should have been suppressed because the State did not prove the seminal fluid belonged to Goney.
 5) The offense reports contradicted Calton's testimony about (a) drugs (b) money left behind by Goney, and (c) a trip Goney was alleged to have taken to the upstairs of the house after the rape.
Additionally, Goney contends that his counsel should have submitted various reports at trial, including the reports of Deputy Hale and Detective Turner.
As an initial point, we must say that we find Goney's position perplexing. At trial, Goney's defense to the rape charge was that he and Calton had consensual sex. During his trial testimony, Goney clearly said the two had intercourse. By contrast, when asking the trial court for post-conviction relief, Goney's position was that he did not have intercourse with Calton, and did not penetrate or ejaculate. However, the D.N.A. results have eliminated these latter claims, and we are uncertain exactly what Goney now believes is his defense to the rape charge. Putting this aside for the moment, however, the allegations about the sexual assault form and about Calton's prior sexual history are obviously moot in light of the D.N.A. test results.
Next, with respect to the claims about Deputy Hales's offense report and the alleged inconsistencies in Calton's testimony, we note that Goney did not provide the trial court with this offense report or with Calton's victim statement. Instead, Goney included these reports in an appendix to his appellate brief. The law is clear that "[a] reviewing court cannot add matter to the record * * * that was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter."State v. Thompson (1996), 116 Ohio App.3d 740, 744
(citation omitted). As a result, we can consider only those evidentiary materials given to the trial court, not any new items filed in our court. Accordingly, because Goney did not submit the offense report or the victim statement to the trial court, we cannot consider them on appeal.
The remaining factual matter is Goney's claim that Detective Menke should have been called to testify. In this regard, the report of the Miami Valley Regional Crime Lab indicates that a small envelope labeled "Hair and Fibers from Love Seat" was tested. The results revealed Caucasian head hair similar to Calton's, Caucasian body hair not suitable for comparison, and fibers of assorted colors. Goney claims, based on this report, that defense counsel should have called Menke to give an "expert" opinion that a rape could not have taken place on the couch in the absence of physical evidence. However, we fail to see the relevance of this point. Clearly, sexual intercourse and ejaculation did take place without the Defendant leaving apparent fiber or hair evidence. In fact, the lab technician who testified at trial said she did not perform any hair analysis based on Goney's hair samples because no foreign hairs were obtained from a nightgown Calton was wearing or from the sexual assault kit (which included pubic hair combing). Given the absence of hair in these areas where it could be expected, the lack of hair or fibers on the couch where the rape allegedly occurred is not surprising. Furthermore, we have serious doubt (and Goney has not convinced us otherwise) that a police deputy — or indeed, any "expert" — could competently conclude from the absence of fiber or hair that a rape did not occur.
We do note from reviewing the record that Calton claimed she took a seat in a chair when Goney first arrived at her house. According to Calton, Goney began to touch and assault her while she sat in the chair. Calton resisted, and Goney then grabbed her and placed her on the couch, which was on the other side of her chair. At that point, Goney's knees were on the couch and Calton's legs were up near his shoulders. Calton testified that Goney then forcibly entered her and ejaculated. By contrast, Goney testified that when he arrived at Calton's apartment, he sat on the couch and they talked for about half an hour. At the time, Calton was sitting in a chair. Goney then went into the kitchen for a drink of water. When he came back into the living room, Calton grabbed his hand and began to make advances to him. After "making out" for a time, they had intercourse in the chair in which Calton sat. Afterwards, Goney returned to the couch and sat down for a while before leaving.
Presumably, Goney could have offered the lack of evidence found on the couch to support his claim that intercourse took place on the chair, not the couch. In a case where credibility and two people's competing versions of events are at stake, the lack of fiber and hair evidence on the couch might have been used to establish that Calton was untruthful and that, by contrast, Goney's version of events should be credited. However, even under these circumstances, we do not believe that prejudice resulted from the failure to offer Deputy Menke's testimony. Specifically, the lack of evidence from the couch does not make the defense version either more or less probable. As we already mentioned, no hair was found on the nightgown or through public combing, despite the fact that sexual intercourse and ejaculation occurred. More important, Goney admittedly sat on the couch both before and after the alleged rape, meaning that fibers from his hair and clothing could have gotten on the couch at those times as well. Yet, no fibers or hair were apparently found. Since this evidence could have been present under either the defense or the prosecution version of the case, the fact that it was absent is no more helpful to one side than it is to the other.
Having disposed of the factual items referred to in Goney's appellate brief, we return to the arguments we believe were factually supported, at least superficially, in Goney's post-conviction petition. These matters were: defense counsel's failure to request a jury view; counsel's alleged failure to interview a witness; and counsel's failure to obtain a second medical opinion. Taking these matters in reverse order, we note that a second medical opinion would have been irrelevant in view of the D.N.A. test results. As we have previously stressed, if D.N.A. testing had originally been done, it would simply have eliminated Goney's claim that he and Calton did not have intercourse. Additionally, Goney does not suggest how a further medical opinion would have helped his case.
Next, with regard to the witness, Michael Hall, the petition offers no evidence to support the allegation that counsel failed to interview the witness. The trial transcript does not reveal if Goney's trial counsel spoke to Hall before trial, and all Goney says in this regard is that trial counsel said he would interview Hall. Therefore, we find no evidence that counsel was deficient in this regard. However, even if counsel did fail to interview Hall, we see no prejudice resulting therefrom, nor do we see a reasonable probability that the outcome of the trial would have been different had the witness been interviewed. State v. Bradley, (1989), 42 Ohio St.3d 136, 137.
Goney's main objection to Hall's testimony is that Hall was allegedly asleep at the time of the rape and could not have heard anything. This point is the basis, in fact, for a number of Goney's claims, including trial counsel's failure to file a motion to suppress, and counsel's failure to submit the offense reports of Hale and Deputy Turner. However, not only did Goney neglect to give the trial court evidence to establish that Hall was asleep, the evidence he did submit on appeal reveals that Hall was not asleep. In this regard, the testimony at trial indicated that on the night of the alleged rape, Calton was babysitting for Michael Hall, the nine-year old son of a neighbor. Calton also had a two-year old daughter of her own. She put her own daughter to bed around 9:00 p.m. and put Michael to bed about a half hour later. Michael testified that he was awakened later that night by noises. He heard Calton screaming and crying, and thought she was being beaten up. He did not see the rape, but heard Calton saying, "Don't do this to me." He also heard a man talking really quiet and telling Calton to "shut up." Later, Michael saw a man come upstairs and use the restroom. He then heard the man leave.
Deputy Hale's investigative and utility reports, dated the day of the crime, state that Hale was dispatched on October 13, 1991, on a rape complaint. The victim, Calton, was taken to Miami Valley Hospital, and Hale then interviewed Calton at the hospital on the same date. At that time, Calton's account, in pertinent part, was as follows:
 Susp [Goney] took off his shirt and by twisting her hands and wrists, forced and held her hands above her head, and then forced her legs apart. He then had forced vaginal intercourse w/her threatening to knock her unconscious, stating, "she was going to get it, one way or the other." During this, compl [Calton] told suspect to stop several times, this was heard by Michael Hall, BM/8 who was upstairs. Hall heard this and said he was scared, he thought compl [Calton] was being beaten up.
Hale noted that he had ordered Calton to report to the detective section on October 15, 1991, and then said, "I was unable to recontact
Michael Hall, so he has not been ordered in." (Emphasis added.)
Given this information, we are unable to understand why Goney insists that Hale's offense report should have been submitted at trial, nor is it clear why Goney continues to maintain that Michael Hall's testimony was suspect because he was asleep. Goney even claims that the police reports show that Hall never gave a statement. To the contrary, however, Deputy Hale's report states that he was unable to "recontact" Hall, meaning that Hale had already contacted or had spoken to Hall before he interviewed Calton at the hospital.
A supplemental offense report prepared by Detective Turner on October 21, 1991, does say that "Dep. Hale further advised in his reports that a Michael Hall, B/M/8 was at the residence at the time of this incident, however, he was upstairs asleep." This is an obvious mistake, as Deputy Hale's report clearly states that Hall was awake. Hale's report is consistent with Hall's testimony at trial, and would have furnished no basis for granting post-conviction relief even if it had been properly submitted to the trial court. Accordingly, we find that Goney failed to submit evidence to establish his claim that counsel was deficient in failing to interview Michael Hall. Furthermore, even if Goney had properly submitted the offense reports of Hale and Turner, no prejudice occurred as a result of trial counsel's alleged failure. Hall's testimony at trial was straightforward and was consistent with what was reported in Deputy Hale's offense and utility reports.
The final issue relates to trial counsel's alleged failure to request a jury view. In this regard, Goney argues that Calton's housing project had thin walls and that Calton could not have screamed for help without waking the neighbors. Goney did not present any evidence to that effect, however, other than his own opinion. As a preliminary point, we note that Calton did not testify at trial that she screamed for help or tried to wake the neighbors. Instead, she testified that she voluntarily let Goney in her house late one Saturday evening because Goney was her cousin. At the time, Calton lived in a two-story unit, in subsidized housing. After putting her daughter and Michael Hall to bed, Calton went to bed around 11:00 p.m. In the early morning hours, she heard a knock, found Goney at the door, and let him into the apartment.
After Goney came in, Calton sat in a chair and Goney stood for a minute. Goney smelled like alcohol and admitted he had been drinking. At that point, Goney squatted by Calton's chair and they continued talking. Eventually, Goney began to touch Calton. When she told him to stop, a struggle ensued. During the struggle, Calton was upset, but she did not testify (nor did Goney) that she was screaming loudly. Calton did say she was crying and that Goney told her to shut up and calm down. At one point, Goney began choking her while telling her to be quiet. When Goney finished, he went upstairs to use the restroom and eventually went home, leaving two twenty dollar bills on an entertainment center.
As was noted above, Michael awoke during the alleged rape and testified that he heard Calton screaming and crying. While Calton's protests may have been loud enough for someone in her own apartment to hear, neither the record nor Goney's factual materials show, other than by speculation, that an occupant of another apartment would have been able to hear Calton on the night of the incident. In particular, Goney has failed to identify any witnesses, like Calton's neighbors, who would have contributed to this aspect of his defense. As a result, Goney has not shown either that counsel acted ineffectively or that his failures prejudiced the defense. State v.Payton (1997), 124 Ohio App.3d 552, 561. As we noted above, the evidence supporting a post-conviction petition must be more than marginally significant and must meet a "threshold standard of cogency."Lawson, supra, 103 Ohio App.3d at 315. See also, State v.Borchers (Aug. 14, 1998), Montgomery App. No. 16844, unreported (trial court need not hold evidentiary hearing where post-conviction claims are supported only by petitioner's self-serving affidavit). Accordingly, based on the contents of the petition, Goney has not shown that a jury view would have been of value.
However, even if trial counsel erred in failing to ask for a jury view, we do not find a reasonable probability that the result of the trial would have been different absent the error. Bradley, supra,42 Ohio St. 3d at 137. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." State v. Crouse
(Sept. 13, 1990), Montgomery App. No. 11891, unreported, p. 4 (citations omitted). Another way of analyzing the issue is whether "counsel's errors compromised the reliability of the trial." State v. Murnahan
(1996), 117 Ohio App.3d 71, 82. Assuming for the sake of argument that a jury view was held and had revealed that Calton's apartment had "thin walls" (whatever that might mean), that would not have undermined our confidence in the verdict. We also do not feel the error compromised the integrity of the trial. First of all, "a view of a crime scene is not considered evidence, nor is it a crucial step in the criminal proceedings." State v. Frost (Nov. 13, 1998), Montgomery App. No. 16564, unreported, p. 3 (citations omitted). Second, various other evidence, including objective physical findings, supported Calton's story. For example, the nurse who testified said that when she first saw Calton at the hospital, Calton was tearful, silent, and drawn up in a fetal position on the cart. At that time, Calton complained of soreness of her hands. The nurse also saw bruises on Calton's neck. These observations are consistent with Calton's testimony that Goney choked her and bent her hands back when she resisted. Calton also threw up at the hospital during treatment, which is again consistent with Calton's actions immediately after the rape. (Calton testified that she ran in the kitchen and gagged because she thought she was going to vomit.)
Likewise, the examining doctor at the hospital noted a bruise on the right side of Calton's neck and tenderness in Calton's fingers. The doctor also saw redness around the vaginal entrance and tenderness of the cervix, and concluded these findings were consistent with forceful intercourse. Finally, Michael Hall testified, as noted above, about what he heard that night. Based on the substantial amount of evidence supporting the verdict, we find no reasonable probability that the result of the trial would have been different if trial counsel had asked for a jury view.
Finally, we note that Goney has failed to specifically identify witnesses of any kind who would have contributed to his defense. As we mentioned before, such a failure requires us to reject the claim that trial counsel either acted ineffectively or prejudiced the defense through his failures.Payton, supra, 124 Ohio App. 3d at 561.
Because we find no merit in Goney's claims of ineffective assistance of trial counsel, the first assignment of error is overruled.
 II
In the second assignment of error, Goney contends that the trial court erred in the original trial proceedings by failing to give proper jury instructions, by allowing Michael Hall to testify under false pretenses, and by entering a finding of guilty when Goney was denied his Sixth Amendment right to competent counsel. Additionally, Goney says the trial court erred in granting the State's second motion for summary judgment without allowing Goney adequate time to respond. The first three claims are barred by res judicata, as they could have been raised on direct appeal. However, to the extent any of these alleged errors are intertwined with issues of ineffective assistance of trial counsel, they are further rejected based on our discussion of the first assignment of error.
Concerning the remaining issue in this assignment of error, we find that the court gave Goney adequate time to respond to the State's motion. Although the court initially granted the State's second motion for summary judgment on July 28, 1998, the court subsequently granted Goney's motion for reconsideration. The court specifically agreed that it should not have granted summary judgment without giving Goney time to respond. However, after considering the materials Goney submitted in opposition to summary judgment, the court again granted summary judgment to the State, on October 29, 1998. Thus, no procedural error occurred. In this regard, we also note that in Goney's Reply Brief, filed on June 11, 1999, Goney concedes that the trial court resolved this issue when it considered his "motion to object to summary judgment."
Based on the above discussion, the second assignment of error is overruled.
 III
The third assignment of error is based on the misconduct of State witnesses at the original trial. Again, Goney raises issues about Hall's testimony as well as conflicts in the testimony of other witnesses. In light of our prior discussion, this assignment of error is barred byres judicata, and is further rejected to the extent it is intertwined with issues of ineffective assistance of counsel. As we have stressed above, the evidence presented in support of post-conviction relief does not support Goney's claims. Accordingly, the third assignment of error is overruled.
 IV
In the fourth assignment of error, Goney alleges prosecutorial misconduct, in that the prosecutor improperly attacked Goney's character and made improper comments to the jury. Specifically, Goney claims the prosecutor compared him to notorious criminals like Charles Manson, Ted Bundy, and Jeffrey Dahmer. Likewise, Goney contends the prosecutor made unfair comment on Goney's prior robbery conviction. In this regard, the prosecutor stated during closing argument as follows:
 He [the defense attorney] talks about character witnesses and how they came in here and Tom came in here and got on the witness stand and they took the oath and as far as they're concerned, the defendant has been honest with them. Maybe that's the case, I don't know. We all know even good people commit crimes, don't we? Whether they're neighbors of ours, people we know, professional people, people without money, everyone commits crimes. Why? I don't know. If I knew I could be making a million dollars doing something else. I don't have to prove to you why people commit crimes. I don't know. You know, Ted Bundy's mother thought he was a great kid, didn't turn out that way, though.
* * *
 When you review the testimony, look at who they are and the bias and friendships surrounding that particular character witness. Not a violent man? Convicted of robbery — and Mr. Flanagan's right, you can't jump from the robbery conviction to the rape and say he committed a robbery, therefore he committed a rape. The Judge will tell you you can't do that. I'm asking you not to do that.
 Now robbery is a crime of violence and earlier we talked about rape and what kind of crime is that? It's a crime of violence. If a man is capable of committing a crime of violence like robbery, he's capable of committing a crime of rape.
To the extent the prosecutor's remarks may have been objectionable, this point would have been evident from the record and could have been raised on direct appeal. As the trial court suggested, the issue of ineffective assistance of appellate counsel can be raised before the court of appeals pursuant to an application for reopening under App. R. 26(B). Notably, applications made more than ninety days after journalization of the appellate judgment require a showing of good cause for untimely filing.
Based on the above discussion, the fourth assignment of error is without merit and is overruled.
 V
In the fifth assignment of error, Goney alleges that his appellate counsel was ineffective by failing to properly address and argue the one issue that she raised on direct appeal. However, the trial court rejected this argument because ineffective assistance of appellate counsel is not properly raised at the trial court level. We agree with the trial court. As we mentioned in State v. Simone (June 19, 1998), Montgomery App. No. 16779, unreported:
 "It is well-established that R.C. 2953.21 and related sections were expressly designed to allow the sentencing court to test constitutional defects in a conviction. In other words, a petition for post-conviction relief shall be based solely upon allegations that could make an original conviction void or voidable. The allegedly ineffective assistance of appellate counsel clearly would not affect the validity of appellant's original conviction; therefore, the issue may not be raised in a petition for post-conviction relief."
Id. at p. 5, quoting from State v. Murr (Apr. 26, 1989), Ottawa App. No. 88-OT-057, unreported. See also, State v. Murnahan
(1992), 63 Ohio St.3d 60.
In view of the preceding comments, the fifth assignment of error is without merit and is overruled.
 VI
As we mentioned earlier, Goney raised three matters at the end of his first brief, calling them additional "propositions of law." These issues relate to Loc. R. 3.03 (D)(2)(d) of the Court of Common Pleas of Montgomery County, General Division, which requires the State to deliver an information packet to defense counsel. Under the rule, the packet is to contain all police reports, including the defendant's prior criminal record. According to Goney, the State failed to comply with this rule before it used his prior robbery conviction at trial. Additionally, Goney says the trial court was bound by this local rule and failed to comply with it when the court let the State present evidence of Goney's prior conviction. For the reasons previously mentioned, the three assignments of error connected to this argument and listed as propositions of law are barred by res judicata. These are purely matters of law that could have been decided on direct appeal, using the trial court record. Consequently, the three errors listed as propositions of law are without merit and are overruled.
 VI
At the beginning of this opinion, we noted that Goney filed a second brief in this case on January 22, 1999, raising four additional assignments of error. We allowed this second brief because Goney filed his first brief before our remand of this case to the trial court on October 21, 1998. Therefore, these four alleged errors are properly before us. In the first of the four, Goney contends that the trial court failed to address five of the ten issues that were presented in Goney's post-conviction petition. These five issues were:
 1) failure to investigate, failure to call witnesses for the defense, and failure to establish vital information from witnesses used by the State;
2) failure to introduce evidence into the court record;.
 3) failure to obtain and introduce into evidence the results of the tests that were conducted on the defendant's blood;.
 4) failure to argue or submit a motion to suppress the testimony of a State's witness who testified under false pretenses and gave inadmissible testimony; and
5) failure to request a jury view of the alleged crime scene.
In this regard, we mentioned above that the trial court first ruled on the State's motion for summary judgment in October 8, 1997. At that time, the trial court granted the motion in part, overruled it in part, and authorized D.N.A. testing. In this decision, the court listed six issues that the court felt were presented by the petition for post-conviction relief. The court then held that four of the issues were barred by resjudicata. However, the court concluded that the two other claims (failure to obtain D.N.A. testing and ineffective assistance of appellate counsel) were not barred. The court did not address issues relating to trial counsel's alleged failure to conduct discovery, interview witnesses, and so on, i.e., the gist of the five issues raised in this assignment of error.
We believe these five issues were raised in the petition for post- conviction relief and that the trial court erred in failing to consider them. However, the fact that they were raised does not mean they were valid. In fact, we have considered all the arguments raised in Goney's post- conviction petition and have found them without merit. Therefore, the trial court's error was harmless because the dismissal of the petition was legally correct on other grounds. See, e.g. Payton, supra, (1997),124 Ohio App.3d 552, 557 (trial court erred in dismissing post- conviction petition on res judicata grounds, but error was not prejudicial because defendant did not submit enough evidentiary materials to show ineffective assistance of counsel). See also, State v. Diviak
(May 8, 1998), Clark App. No. 97 CA 111, unreported (affirming trial court's dismissal of post-conviction petition. Although the trial court erroneously failed to review the transcript before dismissing the petition, the error was harmless since nothing in the transcript was relevant to the defendant's arguments).
Based on the above discussion, we find Goney's first assignment of error in his second brief to be without merit. Accordingly, the assignment of error is overruled.
 VII
In the next assignment of error, Goney claims that the trial court erred by dismissing several issues under the doctrine of res judicata. Basically, Goney's point in this regard is the alleged inconsistency between our prior decision rejecting reconsideration (due to the existence of issues contingent on evidence outside the record), and the trial court's decision that various issues could have been raised on direct appeal. For the reasons already discussed, we reject this contention. We find no inconsistency in any of the decisions rendered in this case. Consequently, the second assignment of error in Goney's second brief is overruled.
 VIII
The third assignment of error is based on the trial court's decision to overrule Goney's supplemental brief and motion for leave to amend the post- conviction petition. Again, this assignment of error is based on purported discrepancies between our reconsideration decision and the trial court's ruling that numerous claims should have been raised on direct appeal. For the reasons previously mentioned, we find this claim without merit.
Additionally, Goney contends in this assignment of error that he should have been allowed to further address the accuracy of the D.N.A. testing in the post-conviction proceeding. In particular, Goney believes some error in collecting evidence must have occurred because the Miami Valley Regional Crime Lab Report refers to Lori "Colton," not Lori "Calton." The trial court rejected this contention, stating that the report contained an obvious typographical error. We agree with the trial court's analysis. As an aside, we note that the accuracy of the 1991 Lab Report was not challenged until after the D.N.A. tests showed a match between Goney and the fluid found in Calton's samples. Again, the positions taken by Goney at trial and even at various points during post-conviction proceedings are inconsistent.
In view of the foregoing discussion, the third assignment of error in the second brief is not well-taken and is overruled.
 IX
In the final assignment of error, Goney again raises issues about the use of his prior conviction and the trial court's interpretation and application of local and state criminal rules for discovery. Once more, we reject these arguments, since they could have been raised on direct appeal. Accordingly, the final assignment of error is overruled.
One final matter is pending before this court, and that is a motion filed by Goney on June 11, 1999. In the motion, Goney asked for leave to file a longer reply brief than is permitted by Loc. R. 2.2 of the Second District Court of Appeals. Goney's motion is granted, and we did specifically consider the contents of the reply brief before issuing our opinion.
Based on the preceding discussion, the motion for leave to file a longer brief is granted and it is so ordered. Upon consideration of the merits of this case, all assignments of error are overruled and the judgment of the trial court is affirmed.
FAIN, J., and YOUNG, J., concur.
Copies mailed to:
John J. Amarante
Thomas B. Goney
Hon. David Gowdown