[Cite as *In re Hetmanski v. Hetmanski*, 2024-Ohio-1646.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| IN THE MATTER OF: | **CASE NO. 2023-T-0065** |
| JILL P. HETMANSKI, | |
| Petitioner-Appellant, | Civil Appeal from the Court of Common Pleas, Domestic Relations Division |
| - and - | |
| EDWARD J. HETMANSKI, JR., | Trial Court No. 2017 DS 00144 |
| Petitioner-Appellee. | |

## O P I N I O N

Decided: April 29, 2024
Judgment: Affirmed

*Mark Lavelle*, 940 Windham Court, Suite 7, Boardman, OH 44512 (For Petitioner-Appellant).

*J.P. Morgan*, 173 West Market Street, Warren, OH 44481 (For Petitioner-Appellee).

JOHN J. EKLUND, J.

{¶1}  Appellant, Jill Hetmanski, and appellee, Edward Hetmanksi, received a dissolution of marriage in 2017. Their signed Separation Agreement was incorporated into the Decree of Dissolution. In 2022, appellee filed a "Motion to Compel Signature (deed and truck title); Motion for Clarification/enforcement of dissolution terms." In 2023, appellee filed an Amended Motion, stating that certain issues in his motion were now moot. However, appellee raised two new issues requesting the court determine he should

be awarded the full sale value of the marital residence, or alternatively, determine that appellant is only entitled to the equity interest at the time of the dissolution.

{¶2} After this, appellant filed a Motion to Show Cause for appellee's alleged failure to comply with certain terms of the Separation Agreement. After a hearing on the above motions, the magistrate denied her motion. Appellant objected to the magistrate's decision and on August 7, 2023, the trial court overruled the objections and adopted the magistrate's decision. It is from this judgment entry of the Trumbull County Court of Common Pleas, Domestic Relations Division, that appellant now appeals.

{¶3} Appellant has raised four assignments of error, arguing the trial court erred by ruling: (1) appellee had fulfilled his obligation to pay appellant $15,000.00 from his Deferred Compensation account; (2) appellee was not required to pay one-half of the net proceeds for the sale of the marital residence to appellant; (3) appellee was not required to pay one-half of appellant's student loan debt payments; and (4) by issuing a "rubber stamp" ruling on appellant's Objections to the Magistrate's Decision without independently reviewing the transcript of proceedings.

{¶4} Having reviewed the record and the applicable caselaw, we affirm the trial court's judgment. (1) The trial court did not err in concluding that the facts demonstrated appellee had fulfilled his obligation to pay appellant $15,000.00 from his Deferred Compensation account. (2) The trial court did not err in concluding that the language of the Separation Agreement did not require appellee to pay appellant one-half of the net proceeds from the sale of the house where appellee had refinanced the house and removed appellant from the mortgage. (3) Next, appellant has provided no support for her

2

Case No. 2023-T-0065

assertion that the trial court failed to independently review the transcript and other case materials before overruling her objections to the magistrate's decision.

{¶5} (4) Finally, we do find that the trial court erred in concluding that appellee had been fraudulently induced to sign the Separation Agreement where the writing upon which he relies and bases the fraudulent inducement directly contradicted the Separation Agreement. Fraud in the inducement may not be proven through parol evidence that directly contradicts the final, integrated document. However, a reviewing court affirms and reverses judgments, not the reasons for the judgments. Although the trial court erred in its application of the parol evidence rule, we conclude that appellant's inaction over the course of six years resulted in a waiver of her right to collect one-half of her student loan debt payments from appellee. Thus, the trial court's ultimate judgment was correct.

{¶6} Therefore, we affirm the judgment of the Trumbull County Court of Common Pleas, Domestic Relations Division.

## Substantive and Procedural History

{¶7} Appellant and appellee were married April 25, 1998.

{¶8} On May 26, 2017, the parties filed a Petition for Dissolution of Marriage (Without Children). The parties filed a Separation Agreement (signed by the parties on May 23 and May 24, 2017) with their Petition for Dissolution.

{¶9} On July 17, 2017, the trial court granted a Decree of Dissolution and incorporated the Separation Agreement into the Decree. Appellant was represented by counsel during the dissolution while appellee represented himself pro se.

{¶10} Several portions of the Separation Agreement are relevant to this appeal:

3

**Real Estate:**

{¶11}  The Separation Agreement provided that the parties jointly owned a marital residence and that appellee:

> shall retain the marital residence free and clear of any claims of the wife, and the wife shall quit claim all of her interest in said marital residence to the husband within thirty (30) days from the Date this Dissolution of Marriage is finalized.
>
> The husband shall continue to reside in said marital residence and maintain the same at his expense. The husband shall pay and hold the wife harmless from the mortgage held by U.S. Bank, the real estate taxes and homeowner's insurance.
>
> The husband shall finance the mortgage held by U.S. Bank as soon as feasible in order to remove the wife's name from said mortgage.
>
> In the event the husband sells said real estate, the wife shall receive half of the net sales proceeds after the mortgage is paid off and the closing costs.

**Timeshare:**

{¶12}  The Separation Agreement provided that the parties would continue to jointly own a time share in Unlimited Vacations and that each party was obligated to pay the monthly fees in alternating months once appellant became employed full time.

**Pension:**

{¶13}  The Separation Agreement provided that appellee would pay appellant "the sum of Fifteen Thousand Dollars ($15,000.00) from the husband's Deferred Compensation account. Both parties shall cooperate to effectuate this distribution."

**Vehicle Title:**

{¶14}  Among other vehicles, the Separation Agreement provided that appellee would retain the Dodge Big Horn truck, "presently in his possession and titled in his name[.]"

4

Case No. 2023-T-0065

**{¶15}** Five years after the Decree of Dissolution, on June 3, 2022, appellee filed a "Motion to Compel Signature (deed and truck title); Motion for Clarification/enforcement of dissolution terms." In his motion, appellee sought an order compelling appellant to sign a quit claim deed for the marital residence and to sign the title to the Dodge Big Horn truck over to him. Appellee also sought a determination that he had fulfilled his obligation to pay one-half of appellant's student loan payments as appellant had signed a writing prior to the Separation Agreement that said appellee would not be legally responsible to pay appellant's student loans. He further requested a determination that he had paid appellant the $15,000.00 from his Deferred Compensation account. Finally, he requested that the court find that appellant owed him $3,480.00 for unpaid timeshare fees.

**{¶16}** On February 23, 2023, appellee filed an Amended Motion, stating that appellant had signed the quit claim deed and signed title to the vehicle, and those issues were therefore moot. Appellee raised two new issues requesting the court determine he should be awarded the full sale value of the marital residence, or alternatively, determine that appellant is only entitled to the equity interest at the time of the dissolution. Finally, appellee requested the court determine that appellant was not awarded any interest in his defined benefit pension plan in the dissolution.

**{¶17}** On March 31, 2023, appellant filed a Motion to Show Cause, seeking to hold appellee in contempt for failing to pay her $15,000.00 from appellee's Deferred Compensation account, for failing to pay her one-half of the net proceeds of the sale of the marital residence, and for failing to pay one-half of appellant's student loan payments.

**{¶18}** On May 3, 2023, the court held a hearing on the motions before a magistrate.

5

Case No. 2023-T-0065

{¶19} Appellee testified that the provision requiring him to pay one-half of appellant's student loan payments was only put into the Separation Agreement to help appellant obtain a home loan for the purchase of a new residence. He said her debt-to-income ratio was bad and it hindered her ability to get a loan. Appellee said he was not in favor of agreeing to pay half of appellant's loans. He said that appellant left a signed document on May 22, 2017, (the day before appellant signed the Separation Agreement) which stated: "the agreement is that Ed will not be responsible to pay 50% of Jill's student loans, and that it was added into the divorce papers to help with the home loan." The document also addressed several other ancillary issues such as the removal of property from the marital residence and the payment of certain debts.

{¶20} Appellee said that the only reason he signed the Separation Agreement with the language requiring him to pay one-half of appellant's student loans was because of that document. Appellee said that appellant had never sought from him any portion of her student loans since their dissolution.

{¶21} Appellee next said that appellant had failed to pay her portion of the timeshare, even after she obtained employment. He said that her share of missed payments were $3,480.00, but that there were no future payments.

{¶22} Appellee testified that he provided $15,000.00 to appellant from his Deferred Compensation account prior to signing the Separation Agreement. He provided a bank statement from April 20, 2017, (approximately one month before the parties signed the Separation Agreement) which showed that he withdrew $18,999.24 from his Deferred Compensation account. He said he withdrew that amount to cover taxes and penalties payable on a $15,000.00 withdrawal. On April 24, 2017, appellee transferred $15,000.00

6

to appellant's account. He said there was no other agreement or reason for his making that payment to appellant other than the anticipated Separation Agreement.

**{¶23}** Appellee said that he refinanced the marital residence to take appellant off of the U.S. Bank mortgage in May 2017. He said that the property appraised at $111,000.00 when he refinanced it, and the mortgage balance was approximately $72,000.00. He sold the property in 2023 for $185,000.00.

**{¶24}** Appellant testified that she did receive $15,000.00 from appellee in April of 2017. However, she said this payment was for appellee to pay her back a portion of her 401k that she liquidated while the two were married. She said she could not remember the amount liquidated from the account, but said that it was "more than 15,000." However, appellant did not provide any evidence of this prior liquidation and did not specify what she did with the $15,000 that appellee provided to her. She maintained appellee did not pay the required $15,000.00 provided under the Separation Agreement.

**{¶25}** Appellant did not deny failing to pay the timeshare fees. She said that appellee verbally told her that she did not have to make those payments.

**{¶26}** She also did not deny signing the side letter stating that appellee would not be responsible for one-half of her student loan payments.

**{¶27}** On June 8, 2023, the magistrate issued a Magistrate's Decision. In it the magistrate determined that the facts as presented at the hearing were not materially in dispute. The magistrate determined appellant had failed to pay her portion of the timeshare fees. However, the magistrate determined that appellee "never made any attempt to collect on the fees and never expressed any intention to require [appellant] to

pay the fees. The court finds that [appellee] therefore waived any claim with regard to those fees."

{¶28} The magistrate next determined that the $15,000.00 payment appellee made to appellant "less than one month prior to the signing of the documents needed for the dissolution of the parties" was the contemplated $15,000.00 Deferred Compensation payment. The magistrate concluded that "[b]ased upon the evidence and the testimony of the parties, the court is convinced the payment was made for the purpose of satisfying the obligation" appellee anticipated in the Separation Agreement.

{¶29} Turning to the sale of the house, the magistrate determined that the Separation Agreement did not require appellee to pay one-half of the net proceeds of the house to appellant because "the obligation to divide the proceeds of the sale of the marital home only applies if [appellee] is not able to refinance the marital residence or otherwise remove [appellant] from the obligation. * * * A reading of the entire provision regarding the marital residence shows [appellant] gave up her claim to the house and transferred her interest in the house upon the completion of the refinance and removal of her name from the mortgage obligation."

{¶30} Finally, the magistrate determined appellant had signed a document stating appellee "will not be responsible to pay 50% of [appellant's] student loans, and that it was added into the divorce papers to help with the home loan." Based on this document, signed the day before the Separation Agreement as well as the testimony and subsequent actions of the parties, the magistrate concluded that appellee had been fraudulently induced to sign the Separation Agreement. The magistrate determined that the parties did not intend for appellee to pay one-half of appellant's student loan payments.

8

{¶31} On June 8, 2023, the trial court adopted the Magistrate's Decision.

{¶32} On June 13, 2023, appellant filed Objections to the Magistrate's Decision and ordered a transcript of the hearing.

{¶33} The transcript was filed on Friday, August 4, 2023.

{¶34} On Monday, August 7, 2023, the trial court overruled the objections to the Magistrate's Decision. The entry stated that the trial court "conducted an independent review of the Objection, of the transcript filed, the record, and the Magistrate's Decision in dispute to ascertain if the magistrate has properly determined the factual issues and appropriately applied the law."

{¶35} Appellant timely appealed, raising four assignments of error.

### Assignments of Error and Analysis

{¶36} Each of appellant's assignments of error relates to the trial court adopting the magistrate's decision. "When reviewing an appeal from a trial court's adoption of a magistrate's decision, an appellate court must determine whether the trial court abused its discretion in adopting the decision." *Huntington Natl. Bank v. Betteley*, 11th Dist. Lake No. 2015-L057, 2015-Ohio-5067, ¶ 17. "Further, any claimed error on appeal must be based on the trial court's actions, and not on the magistrate's decision." *Id.*, citing *Bobel Elec., Inc. v. Friedman*, 9th Dist. Lorain No. 03CA008217, 2003-Ohio-4530, ¶ 7-8.

{¶37} "'The term "abuse of discretion" is one of art, connoting judgment exercised by a court which neither comports with reason, nor the record.' *State v. Underwood*, 11th Dist. Lake No. 2008-L-113, 2009-Ohio-208, ¶ 30, citing *State v. Ferranto*, 112 Ohio St. 1. Stated differently, an abuse of discretion is "the trial court's 'failure to exercise sound, reasonable, and legal decision-making.'" *Id.,* quoting *State v. Beechler*, 2d Dist. Clark No.

9

09-CA-54, 2010-Ohio-1900, ¶ 62, quoting Black's Law Dictionary 11 (8th Ed.Rev.2004). "When an appellate court is reviewing a pure issue of law, 'the mere fact that the reviewing court would decide the issue differently is enough to find error[.] * * * By contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error.'" *Id.*, quoting *Beechler* at ¶ 67.

{¶38} In a dissolution hearing, the trial court has limited authority. *Morris v. Morris,* 148 Ohio St.3d 138, 2016-Ohio-5002, 69 N.E.3d 664. ¶ 18. If the parties are "'satisfied with the separation agreement'" and wish to dissolve the marriage, and the court approves the agreement, "then the court must grant 'a decree of dissolution * * * that incorporates the separation agreement." *Id.,* quoting R.C. 3105.65(A) and (B). "The separation agreement then becomes a 'binding contract between the parties.'" *Id.* quoting *In re Adams*, 45 Ohio St.3d 219, 220, 543 N.E.2d 797 (1989).

{¶39} A separation agreement is a contract subject to the same rules of construction as other contracts. *Forstner v. Forstner,* 68 Ohio App.3d 367, 372, 588 N.E.2d 285 (1990); *Grzely v. Singer,* 2012-Ohio-2440, 971 N.E.2d 481, ¶ 22 (11th Dist.).

{¶40} Where a term of a separation agreement is unambiguous, the words must be given their plain, ordinary, and common meaning. *Id.* "'A contract can only be interpreted if the provisions are ambiguous or uncertain.'" *Willoughby Supply Co., Inc. v. Villhauer*, 2018-Ohio-2077, 113 N.E.3d 973, ¶ 25 (11th Dist.), quoting *Career & Technical Assn. v. Auburn Vocational School Dist. Bd. of Edn.,* 11th Dist. Lake No. 2013-L-010, 2014-Ohio-1572, ¶ 18. The language of a contract is ambiguous "'if it is susceptible to two or more reasonable interpretations.'" *Id.*, quoting *id.* The trial court's determination

10

whether a provision of a contract is ambiguous is a matter of law subject to de novo review. *Id.*

**{¶41}** Where the terms of a separation agreement are confusing or ambiguous, a trial court enjoys broad discretion "in clarifying those terms" and resolving disputes by "considering not only the parties' intent with regards to those terms, but also the equities involved in each particular case." *Miller v. Miller*, 5th Dist. Stark No. No. 2001CA00189, 2002 WL 138498, *4 (Jan. 28, 2002). "[W]hen the term is not clear, parol evidence is admissible to explain the meaning of the words." *Forstner* at 372. The court must interpret a separation agreement to carry out the intent of the parties. *Id.*

**{¶42}** Appellant's first assignment of error states:

**{¶43}** "[1.] THE TRIAL COURT ERRED WHEN IT FOUND AN AMBIGUITY, IN CONTRAVENTION OF OHIO REVISED CODE SECTION 3105.65, AND RULED THAT APPELLEE HAS MET HIS OBLIGATION TO PAY APPELLANT $15,000.00 FROM HIS DEFERRED COMPENSATION ACCOUNT AS REQUIRED BY ARTICLE 8 OF THE PARTIES['] SEPARATION AGREEMENT."

**{¶44}** Appellant asserts that every provision of the Separation Agreement was prospective. She therefore argues the $15,000.00 appellee provided to appellant from appellee's Deferred Compensation account prior to the Separation Agreement was not the same $15,000.00 the Separation Agreement contemplated. Because of this, she believes the trial court erred by ruling appellee had fulfilled his obligation to pay appellant $15,000.00 from his Deferred Compensation account.

**{¶45}** First, appellant is incorrect that the trial court determined this portion of the Separation Agreement was ambiguous. Instead, the trial court found as a matter of fact

11

Case No. 2023-T-0065

that the evidence supported appellee's claim that the obligation to pay the $15,000.00 had been met. The court concluded that appellee withdrew money from his Deferred Compensation account and made the contemplated $15,000.00 payment "less than one month prior to the signing of the documents needed for the dissolution of the parties. The explanation of the payment is consistent with the agreement of the parties. Based upon the evidence and the testimony of the parties, the court is convinced the payment was made for the purpose of satisfying the obligation" of appellee.

{¶46} Because the Separation Agreement is unambiguous on this point, the trial court applied its plain meaning to the parties' conduct. The magistrate heard testimony and was in the best position to weigh the evidence. In doing so, the magistrate determined that appellee made the contemplated $15,000.00 payment from his Deferred Compensation account. The trial court did not abuse its discretion in adopting the magistrate's decision finding that appellee had fulfilled this provision of the Separation Agreement.

{¶47} Accordingly, appellant's first assignment of error is without merit.

{¶48} Appellant's second assignment of error states:

{¶49} "[2.] THE TRIAL COURT ERRED WHEN IT FOUND AN AMBIGUITY, IN CONTRAVENTION OF OHIO REVISED CODE SECTION 3105.65, AND RULED THAT APPELLANT'S MOTION FOR CONTEMPT OF COURT WAS DENIED AND THEREFORE ERRED IN FAILING TO REQUIRE APPELLEE TO PAY ONE-HALF OF THE PROCEEDS OF THE SALE OF THE MARITAL RESIDENCE AS REQUIRED [by] ARTICLE 3 OF THE PARTIES['] SEPARATION AGREEMENT."

12

{¶50} Appellant argues that the provision in the Separation Agreement addressing the sale of appellee's home was not ambiguous, that appellee should have paid appellant half of the proceeds from the sale of the house, and that the trial court erred by not holding appellee in contempt for failure to do so. Appellant asserts that there is nothing ambiguous about the phrase "[i]n the event the husband sells said real estate, the wife shall receive half of the net sales proceeds after the mortgage is paid off and the closing costs." She argues that this language is unambiguous and supports her conclusion that she is entitled to one-half of the proceeds of the sale of the house.

{¶51} However, appellant does not offer an interpretation of the Separation Agreement as a whole. In order to arrive at her interpretation, she relies on one line in isolation from the rest of the "Real Estate" section of the Separation Agreement.

{¶52} "To determine whether a contract is ambiguous, courts must consider the contract "'as a whole,'" and not simply "'detached or isolated parts thereof.'" *Sauer v. Crews*, 140 Ohio St.3d 314, 2014-Ohio-3655, 18 N.E.3d 410, ¶ 13, quoting *Gomolka v. State Auto. Mut. Ins. Co.*, 70 Ohio St.2d 166, 172, 436 N.E.2d 1347 (1982). We conclude that, when read as a whole, the "Real Estate" section of the Separation Agreement is not ambiguous. The section sets forth that at the time of the separation, the parties jointly owned a parcel of real estate, that appellee would retain the residence "free and clear of any claims" of appellant, and that appellant would quit claim "all of her interest in said marital residence[.]" Appellee was to continue to reside in the residence and maintain it at his expense, pay the mortgage, the taxes, and insurance on the property, and hold appellant harmless for said expenses. Appellee agreed to refinance the mortgage "as soon as feasible in order to remove [appellant's] name from said mortgage. In the event

13

[appellee] sells said real estate [appellant] shall receive half of the net sales proceeds after the mortgage is paid off and the closing costs."

{¶53} The Separation Agreement, when read as a whole, is clear that appellant would only be entitled to half of the net sale of the proceeds of the residence "in the event" that appellee did not refinance the mortgage and remove appellant from that obligation and instead sold the house. That is not what happened here. Appellee refinanced the mortgage soon after the dissolution of the marriage. Appellee paid off the refinanced mortgage, appellant quit claimed her interest in the residence, and appellee sold the residence. Therefore, appellant is not entitled to half of the net proceeds of the residence.

{¶54} Accordingly, appellant's second assignment of error is without merit.

{¶55} Appellant's third assignment of error states:

{¶56} "[3.] THE TRIAL COURT ERRED WHEN IT FOUND AN AMBIGUITY, IN CONTRAVENTION OF OHIO REVISED CODE SECTION 3105.65, AND RULED THAT APPELLANT'S MOTION FOR CONTEMPT OF COURT WAS DENIED AND THEREFORE ERRED IN FAILING TO REQUIRE APPELLEE TO PAY ONE-HALF OF HER STUDENT LOANS AS REQUIRED BY ARTICLE 10 OF THE PARTIES['] SEPARATION AGREEMENT."

{¶57} Appellant argues the trial court erred in concluding that appellee was fraudulently induced into signing the Separation Agreement. Here, appellee claims that the parties signed a side agreement the day prior to signing the Separation Agreement that indicated appellee would not be required to pay appellant's student loans as provided in the Separation Agreement and that language to that effect in the Separation Agreement was intended solely to assist appellant in obtaining a loan.

14

Case No. 2023-T-0065

**{¶58}** This issue implicates the parol evidence rule. "The parol evidence rule states that 'absent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements.'" *Galmish v. Cicchini,* 90 Ohio St.3d 22, 27, 734 N.E.2d 782 (2000), quoting 11 Williston, *Contracts*, 569-570, Section 33:4 (4 Ed.1999). "'The parol evidence rule is a rule of substantive law which, when applicable, defines the limits of a contract.'" *Id.*, quoting *Charles A. Burton, Inc. v. Durkee*, 158 Ohio St. 313, 109 N.E.2d 265, 270 (1952), paragraph one of the syllabus. "'Extrinsic evidence is excluded because it cannot serve to prove what the agreement was, this being determined as a matter of law to be the writing itself.'" *Id.*, quoting *In re Gaines' Estate*, 15 Cal.2d 255, 264-265, 100 P.2d 1055 (1940). Where there is a single and final document memorializing the understanding of the parties, prior and contemporaneous negotiations, whether oral or written, are excluded. *Id.*

**{¶59}** The purpose of the parol evidence rule is to protect the integrity of written contracts. *Id.* The rule ensures that a subsequent written contract holds higher status than earlier settlements, negotiations, or agreements, whether written or oral, "'by deeming those earlier expressions to be merged into or superseded by the written document.'" *Id.* at 27-28, quoting 11 Williston, *Contracts*, *supra,* at 541-548, Section 33:1.

**{¶60}** In cases of fraud, the parol evidence rule is not a bar to parol or extrinsic evidence for the purpose of proving fraudulent inducement. *Id.* at 28. This is because "'fraud cannot be merged'" and thus the rule "'is not applicable to preclude the admission of parol or extrinsic evidence to prove that a written contract was induced by fraud.'" *Id.*,

15

quoting Parol-Evidence Rule; Right to Show Fraud in Inducement or Execution of Written Contract, 56 A.L.R. 13, 34-36 (1928).

{¶61} However, the parol evidence rule will nevertheless apply where the fraudulent inducement claim "'which alleges that the inducement to sign the writing was a promise, the terms of which are directly contradicted by the signed writing.'" *Id.* at 29, quoting *Marion Prod. Credit Ass'n v. Cochran*, 40 Ohio St.3d 265, 533 N.E.2d 325 (1988), paragraph three of the syllabus. That is to say, a party cannot prove fraudulent inducement "'simply by alleging that a statement or agreement made prior to the contract is different from that which now appears in the written contract. Quite the contrary, attempts to prove such contradictory assertions *is exactly what the Parole Evidence Rule was designed to prohibit.*'" (Emphasis added). *Id.*, quoting Shanker, *Judicial Misuses of the Word Fraud to Defeat the Parol Evidence Rule and the Statute of Frauds (With Some Cheers and Jeers for the Ohio Supreme Court)*, 23 Akron L.Rev. 1, 7 (1989). "'Unless the false promise is either independent of or consistent with the written instrument, evidence thereof is inadmissible.'" *Id.* at 30, quoting *Alling v. Universal Mfg. Corp.*, 5 Cal.App.4th 1412, 1436, 7 Cal.Rptr.2d 718, 734 (1992).

{¶62} "Parol evidence is used only to interpret the terms, and not to contradict the terms." *First Natl. Bank of Pennsylvania v. Nader*, 2017-Ohio-1482, 89 N.E.3d 274, ¶ 25 (9th Dist.), citing *Blosser v. Enderlin*, 113 Ohio St. 121, 134, 148 N.E. 393 (1925). Parol evidence may be used to explain an ambiguity even where a contract contains an integration clause. *Doody Co. v. Montgomery Ward & Co.*, 10th Dist. Franklin No. 83AP-254, 1984 WL 5717, *5 (April 26, 1984.). "Thus, parol evidence can only be introduced to challenge a written contract when the alleged oral misrepresentations are *consistent* with

16

the written contract." *Westwinds Dev. Corp. v. Outcalt,* 11th Dist. Geauga No. 2008-G-2863, 2009-Ohio-2948, ¶ 58.

**{¶63}** Here, the document appellant signed saying that appellee would not be responsible to make one-half of her student loan payments directly contradicts the later, integrated Separation Agreement. The language of the Separation Agreement is clear and unambiguous on this point and the words must be given their common meaning. Thus, in order to understand the meaning of the Separation Agreement, there was no need for the trial court to turn to the parties' intent in order to clarify those terms.

**{¶64}** The trial court's conclusions that appellee was fraudulently induced into signing the Separation Agreement were erroneous because appellee's allegation in support of the fraudulent inducement was simply that the prior statement was contrary to the Separation Agreement the parties signed. This situation "'*is exactly what the Parole Evidence Rule was designed to prohibit.*'" (Emphasis added). *Galmish* at 30, quoting Shanker, *Judicial Misuses*, 23 Akron L.Rev. at 7.

**{¶65}** Although we find that the trial court's reasoning was incorrect, "reviewing courts affirm and reverse judgments, not the reasons for the judgments." *Geneva v. Fende,* 11th Dist. Ashtabula No. 2009-A-0023, 2009-Ohio-6380, ¶ 33. "'Thus, when a trial court has stated an erroneous basis for its judgment, an appellate court must affirm the judgment if it is legally correct on other grounds, that is, it achieves the right result for the wrong reason, because such an error is not prejudicial.'" *Underwood v. Cuyahoga Community College,* 2023-Ohio-4180, 229 N.E.3d 650, ¶ 63 (11th Dist.), quoting *State v. Payton,* 124 Ohio App.3d 552, 557, 706 N.E.2d 842 (12th Dist.1997). "'It is the duty of the reviewing court to affirm the judgment if it can be supported on any theory, although a

17

Case No. 2023-T-0065

different theory from that of the trial court." *Id.*, quoting *Newcomb v. Dredge,* 105 Ohio App. 417, 424, 152 N.E.2d 801 (2nd Dist.1957).

{¶66} In stating the factual basis supporting its incorrect conclusion that the parol evidence rule applied, the magistrate's decision noted that "in the six years since the completion of the dissolution [appellant] has never requested payment from nor submitted a bill to [appellee] for payment of her student loans."

{¶67} "Waiver as applied to contracts is a voluntary relinquishment of a known right." *White Co. v. Canton Transp. Co.,* 131 Ohio St. 190, 2 N.E.2d 501 (1936), paragraph one of the syllabus. "'The essential elements of a waiver are an existing right, benefit, or advantage; knowledge, actual or constructive, of the existence of such right, benefit, or advantage; and an actual intention to relinquish it or an adequate substitute for such intention.'" *Weaver v. Weaver*, 36 Ohio App.3d 210, 212, 522 N.E.2d 574 (4th Dist.1987), quoting 31 Corpus Juris Secundum (1964) 408, Estoppel, Section 67(2); *Bank One of E. Ohio, N.A. v. Liberty Bell, Inc.,* 11th Dist. Trumbull No. 88-T-4142, 1990 WL 2547, *3 (Jan. 12, 1990) (citing *Weaver*).

{¶68} The trial court affirmatively found that appellee had waived his right to collect monthly timeshare fees because he failed to enforce his right to collect payments. Similarly, the trial court's factual findings support concluding that appellant voluntarily relinquished her right to collect student loan payments from appellee due to her failure to request or enforce appellee paying his one-half share of her student loans.

{¶69} Appellant had both a right and a knowledge of that right to collect one-half of her student loan debt payments from appellee. Appellant's inaction over the course of six years since the completion of the dissolution demonstrates an actual intention or

18

adequate substitute for such intention to relinquish her right to collect one-half of her student loan debt payments from appellee.

{¶70} Accordingly, we find that appellant's third assignment of error is without merit. Although the trial court erred in finding the parol evidence rule did not apply to the prior written agreement between the parties, the trial court's ultimate judgment was correct for the reasons stated above.

{¶71} Appellant's fourth assignment of error states:

{¶72} "[4.] THE TRIAL COURT ERRED WHEN IT RUBBER STAMPED THE MAGISTRATE'S DECISION ON THE SAME DAY AS THE DECISION OF THE MAGISTRATE WITHOUT A *de novo* REVIEW OR ANY POSSIBLE DETAILED ANALYSIS."

{¶73} Finally, appellant argues that the trial court could not have properly reviewed the magistrate's decision because the transcript was filed on Friday, August 4, 2023, and the trial court adopted the magistrate's decision on Monday, August 7, 2023. She argues that the speed in which the trial court ruled implicitly demonstrates that the trial court violated Civ.R. 53

{¶74} Civ.R. 53(D)(4)(d) requires that a trial court "undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." "A trial judge who fails to undertake a thorough independent review of the [magistrate's] report violates the letter and spirit of Civ.R. 53, and we caution against the practice of adopting [magistrate's] reports as a matter of course, especially where a [magistrate] has presided over an entire trial." *Hartt v. Munobe*, 67 Ohio St.3d 3, 6, 615 N.E.2d 617 (1993).

19

{¶75} "[W]ithout the aid of a transcript," a trial court cannot conduct an independent review of documentation and testimony. *Haverdick v. Haverdick*, 11th Dist. Trumbull No. 2010-T-0040, 2010-Ohio-6256, ¶ 16. A failure to conduct an independent review pursuant to Civ.R. 53(D)(4)(d) renders the "trial court's adoption of the magistrate's decision * * * defective as a matter of law." *Id.,* citing *In re B.D.,* 11th Dist. Nos. 2009-L003 and 2009-L-007, 2009-Ohio-2299, ¶ 79.

{¶76} Here, the transcript was available to the trial court before the trial court adopted the magistrate's decision. The trial court's judgment entry states it conducted an independent review of appellant's objections, the transcript, the record, and the magistrate's decision. Beyond the transcript being filed on a Friday and the trial court ruling on the next Monday, there is nothing to support appellant's assertion that the trial court did not independently review the case materials. The underlying hearing was brief, with only two witnesses testifying, and the transcript itself is only 69 pages long. The trial court has stated it reviewed the transcript and there is no reason to doubt the trial court has done so.

{¶77} Accordingly, appellant's fourth assignment of error is without merit.

{¶78} For the foregoing reasons, the judgment of the Trumbull County Court of Common Pleas, Domestic Relations Division, is affirmed.


EUGENE A. LUCCI, P.J.,

MARY JANE TRAPP, J.,

concur.


20

Case No. 2023-T-0065